IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTONIO S. BEATTIE,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-08-00622** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **DEPARTMENT OF CORRECTIONS** | : | |
| **SCI-MAHANOY,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### M E M O R A N D U M

Pending before the court are three motions to dismiss the civil rights complaint

pursuant to 42 U.S.C. § 1983 filed by Plaintiff Antonio S. Beattie ("Beattie"), filed on

behalf of three sets of defendants,[1] several state officials and prison officials from the

State Correctional Institution at Mahanoy in Frackville, Pennsylvania ("SCI-

Mahanoy").  For the reasons set forth below, the motions to dismiss of two sets of

defendants will be granted, and the motion to dismiss of the third set of defendants

will be granted in part and denied in part.

---

[1]  The first set of Defendants includes James P. Goodman, Esquire, Schuylkill County
District Attorney, and William Reiley, Esquire, former Schuylkill County Assistant District Attorney
(collectively, "DA Defendants").  The second set of Defendants includes Magistrate District Judge
William Slezosky, and Schuylkill County Court of Common Pleas Judge Charles Miller ("Judicial
Defendants").  The third set of Defendants includes the Pennsylvania Department of Corrections,
Edward Klem, Barbara Mason, Michael Youron, Pennsylvania State Police, Lorraine Kramer, and
Shawn Kofluk (collectively, "Commonwealth Defendants").

I.      **Background**

The facts alleged in the complaint are as follows.  On July 3, 2002, Beattie was an inmate incarcerated at SCI-Mahanoy and was participating in a program for convicted sex offenders.  (Doc. 3 at 4.)  The program was scheduled to end on January 3, 2004.  (*Id*.)  In October 2002, Beattie was removed from the program because, according to the complaint, he had been helping other inmates with their homework.  (*Id*.; Doc. 25 at 1.)  Beattie was placed at the bottom of the list for placement in the next program.  (Doc. 3 at 4.)  However, he was not reinstated into the program.  (*Id*.)  Beattie avers that the failure to reinstate him in the program caused his parole to be denied on two occasions and, therefore, he remained incarcerated for his maximum sentence.

On May 21, 2007, Beattie finished serving his sentence.  (*Id*.)  Upon his release from incarceration, under Pennsylvania's Megan's Law Beattie was required to register with the Pennsylvania State Police as a sex offender.[2]  *See* 42 Pa. Cons. Stat.

---

[2]   Under Pennsylvania's Megan's law, an individual convicted of an offense enumerated in 42 Pa. Cons. Stat. § 9795.1 must register with the Pennsylvania State Police and provide information related to his current or intended residence, employment, and educational enrollment upon the release from incarceration, parole from a correctional institution, or commencement of an intermediate punishment or probation.  42 Pa. Cons. Stat. § 9795.2(a)(1).  Additionally, the individual must inform the state police within 48 hours of any changes related to the individual's residence, employment, or educational enrollment.  42 Pa. Cons. Stat. § 9795.2(a)(2).  Should the individual fail to comply with these registration requirements, 18 Pa. Cons. Stat. § 4915 imposes

§ 9795.2(a).  However, Beattie did not register and on the date of his release from

incarceration, Pennsylvania State Police Trooper Shawn Kofluk arrested him for

failing to register as a sex offender under Megan's Law.  (Doc. 3 at 4.)  Beattie was

charged under 18 Pa. Cons. Stat. § 4915 and detained at Schuylkill County Prison

while awaiting trial.[3]  (*Id*.)  Preliminary hearings with respect to his case were

scheduled for May 30, 2007 and June 6, 2007 in the Schuylkill County Court of

Common Pleas, but were postponed.  (*Id*.)  Further, a trial date and bail hearing were

set for August 2007, but were also postponed.  (*Id*.)  Beattie continued to be detained

in Schuylkill County Prison until October 18, 2007, at which time the charge was

dismissed by the trial court and Beattie was released.  (*Id*.)

Beattie filed the instant § 1983 complaint in this court on March 31, 2008,

seeking compensatory and punitive damages against all Defendants based on his

removal from the sex offender program and the events subsequent to that removal.

(Doc. 3.)  By order dated May 27, 2008, the court directed service of the complaint on

the named defendants.  (Doc. 8.)  The Judicial Defendants filed a motion to dismiss

and supporting brief on June 19, 2008.  (Docs. 11 & 12.)  The Commonwealth

criminal penalties with minimum penalties of at least two years depending on the offense.

[3]  Neither the complaint nor any motion to dismiss indicates when Beattie was arraigned on this charge.

3

Defendants filed a motion to dismiss and supporting brief on June 25, 2008.  (Docs. 16 & 17.)  The DA Defendants filed a motion to dismiss and supporting brief on July 1, 2008.  (Docs. 20 & 21.)  These motions are now ripe for disposition.

## II.    <u>Legal Standard - Motion to Dismiss</u>

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in Rule 8(a)(2) "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted).  "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Id*.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief.  *Twombly*, 127 S. Ct. at 1965; *accord*, *e.g.*, *Phillips*, 515 F.3d at 231-32; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.

4

2007) (the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted)); *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips*, 515 F.3d at 233.  If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss.  *Twombly*, 127 S. Ct. at 1965, 1974; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence

of" necessary elements of the plaintiff's cause of action.  *Phillips*, 515 F.3d at 234

(quoting *Twombly*, 127 S. Ct. at 1965).

"To decide a motion to dismiss, courts generally consider only the allegations

contained in the complaint, exhibits attached to the complaint and matters of public

record."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192,

1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263,

268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that

a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are

based on the [attached] document[s]."  *Pension Benefit*, 998 F.2d at 1196.

Additionally, "documents whose contents are alleged in the complaint and whose

authenticity no party questions, but which are not physically attached to the pleading,

may be considered."  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d

Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d

383, 388 (3d Cir. 2002) ("Although a district court may not consider matters

extraneous to the pleadings, a document *integral to or explicitly relied* upon in the

complaint may be considered without converting the motion to dismiss into one for

summary judgment.") (internal quotation omitted).  However, the court may not rely

on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III. __Discussion__

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under

7

color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[4] A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Nevertheless, it is well-settled that certain government officials possess immunity from § 1983 liability. *Id*.

As stated above, three sets of defendants have filed motions to dismiss Beattie's complaint. The court will discuss the motions in turn.

---

[4] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

A.      **Motion to Dismiss by DA Defendants**

In connection with the court proceedings related to Beattie's failure to register under Megan's Law mentioned above, in the complaint Beattie names, *inter alia*, James P. Goodman, Esquire, District Attorney for Schuylkill County, and William Reiley, Esquire, former Assistant District Attorney for Schuylkill County.  Beattie alleges that Defendant Goodman is "liable and culpable with his knowledge that an unlawful arrest, lack of probable cause and no *prima facie* case existed in order to bring the then defendant Antonio Beattie to a trial."  (Doc. 3 at 3.)  The complaint contains no further allegations as to Defendant Goodman.

Beattie alleges that Defendant Reiley is "liable and culpable for intentionally detaining Mr. Beattie by making bail impossible for him and prolonging the bail hearing and other criminal processes once an arrest has been undertaken."  (*Id.*)  He also asserts that Defendant Reiley intentionally caused bail proceedings to be postponed under a "pretense that Mr. Beattie was a flight risk."  (*Id.* at 4.)

The United States Supreme Court has recently reconfirmed that prosecutors are absolutely immune from liability in § 1983 suits based on prosecutorial actions that are "intimately associated with the judicial phase of the criminal process."  *Van de Kamp v. Goldstein*, — U.S. —, 129 S. Ct. 855, 860 (2009) (quoting *Imbler v.*

9

*Pachtman,* 424 U.S. 409, 430 (1976)).  *See also Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006); *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001).  The availability of immunity depends not on the identity or office of the individual asserting it, but rather on the function served by the act for which it is sought. *Buckley*, 509 U.S. at 269 (citing *Forrester v. White*, 484 U.S. 219, 229 (1988)); *Williams*, 453 F.3d at 178 (observing that courts apply absolute prosecutorial immunity using a functional approach that focuses on the purpose served by the acts for which immunity is sought); *Hughes*, 242 F.3d at 125 (same).  This immunity applies when a prosecutor prepares to initiate a judicial proceeding, and it continues throughout the execution of the prosecutor's basic trial advocacy duties.  *Van de Kamp*, 129 S. Ct. at 861.  *See also Hughes*, 242 F.3d at 125 (observing that immunity covers actions such as "initiating and pursuing a criminal prosecution and presenting the state's case in court").  In contrast, absolute immunity may not protect a prosecutor acting outside of the trial process in a purely investigative or administrative capacity.  *See Van de Kamp*, 129 S. Ct. at 861; *Buckley*, 509 U.S. at 273 ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity"); *Hughes*, 242 F.3d at 125

10

("A prosecutor's administrative and investigative duties, however, are not immune").

The prosecutor seeking to invoke immunity has the burden of establishing its

applicability to the actions upon which the plaintiff bases a claim.  *See Burns v. Reed*,

500 U.S. 478, 486 (1991).

When conferring prosecutorial immunity in a particular case, courts consider

only whether the prosecutor's action served an advocacy function.  The prosecutor's

subjective motivation has no effect on the availability of immunity.  *Kulwicki v.*

*Dawson*, 969 F.2d 1454, 1464 (3d Cir. 1991) ("Consideration of personal motives is

directly at odds with the Supreme Court's simple functional analysis of prosecutorial

immunity.").

In the instant case, it is clear that Beattie seeks to hold the DA Defendants

liable for their role in criminally prosecuting him for his failure to comply with the

registration of sex offenders under Pennsylvania's Megan's Law, 42 Pa. Cons. Stat.

§ 9795.2, and in violation of 18 Pa. Cons. Stat. § 4915(a)(1), notwithstanding that the

charges against him were dropped.  Prosecuting Beattie for failure to register as a sex

offender under Pennsylvania's Megan's Law is clearly an action intimately associated

with the judicial process.  Thus, Defendants Goodman and Reiley enjoy absolute

immunity from suit, and, accordingly, the claims against them must be dismissed.

11

**B.     Motion to Dismiss by Judicial Defendants**

In the complaint, in connection with the court proceedings set forth above,

Beattie also names Schuylkill County District Justice William A. Slezosky and

Schuylkill County Court of Common Pleas Judge Charles L. Miller.  Beattie alleges

that District Justice Slezosky is

> liable and culpable for not granting the then defendant Mr. Beattie bail,
> ROR, and for failing to follow the Fourth Amendment rights and PA R.
> Cr. P. for probable cause, a preliminary hearing and other procedures
> that would have allowed Mr. Beattie discharge from prison and the
> quashing of the District Attorney's Information and the Warrant of
> Arrest.

(Doc. 3 at 3.)  As to Judge Miller, Beattie sets forth the same allegations with respect

to the trial scheduled before Judge Miller.  (*Id*. at 3-4.)

The doctrine of absolute judicial immunity bars civil suits for monetary

damages against judicial officers who have jurisdiction over the subject matter before

them and they are performing a "judicial" act.  *Mireles v. Waco*, 502 U.S. 9, 11-12

(1991); *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978).  Immunity applies even if

the action was taken in error, done maliciously or was in excess of a judge's

authority.  *Mireles*, 502 U.S. at 13; *Stump*, 435 U.S. at 356-57.  Judicial immunity

extends to all judicial officers, including district justices.  *Praisner v. Stocker*, 459

A.2d 1255, 1262 (Pa. Super. Ct. 1983).

In determining whether the challenged act is a "judicial act," the court asks two questions: (1) is the act a function normally performed by a judge and (2) did the party aggrieved by the challenged act deal with the judge in his judicial capacity. *Stump*, 435 U.S. at 362.

In the instant case, Beattie complains about District Justice Slezoksy and Judge Miller's actions with respect to the denial of bail, a preliminary hearing, and a trial. Such actions on the part of District Justice Slezosky and Judge Miller fall squarely within the functions normally performed by a judge.  Further, at the time both judges either interacted with Beattie or affected Beattie, Beattie was dealing with both as a defendant charged with a violation of Pennsylvania law.  Therefore, because the allegations raised by Beattie against District Justice Slezosky and Judge Miller all relate to actions taken by these defendants during the exercise of their official duties, these defendants are entitled to absolute judicial immunity and the claims against them will be dismissed.

## C.     Motion to Dismiss by Commonwealth Defendants

In the complaint, Beattie alleges that the DOC and SCI-Mahanoy Superintendent Klem failed to oversee his treatment at SCI-Mahanoy with procedures mandated by the Commonwealth and the Pennsylvania Board of Probation and

13

Parole.  (Doc. 3 at 2.)  The proper procedures would have provided Beattie with assistance in his rehabilitation, parole, and compliance with registration under Pennsylvania's Megan's Law.  (*Id*.)  Beattie alleges that had the DOC and Superintendent Klem not acted negligently, he would not have been arrested by the Pennsylvania State Police and State Trooper Kofluk and detained at Schuylkill County Prison for failing to register as a sex offender under Megan's Law.  (*Id*.)

Beattie further alleges that Defendant Youron, a licensed psychologist at SCI-Mahanoy, Defendant Kramer, a psychological services specialist at SCI-Mahanoy, and Defendant Mason, a case worker at SCI-Mahanoy, all failed to follow the same procedures that would have assisted Beattie in his rehabilitation, parole, and compliance with registration under Megan's Law.  (*Id*. at 2-3.)  In addition, Beattie asserts that Defendants Youron and Kramer violated his rights when they removed him from the sex offender program for assisting other inmates with their homework.  (*Id*.)  Additionally as to Defendant Mason, Beattie asserts that Mason knew there was no probable cause for Beattie's arrest on the date of his release from incarceration for failing to register as a sex offender under Megan's Law.  (*Id*. at 3.)

Finally, Beattie alleges that the Pennsylvania State Police and State Trooper

Kofluk did not have probable cause to arrest him for failing to register as a sex

offender under Megan's Law on the date of his release from incarceration.  (*Id*.)

## 1.    <u>Immunity from Suit</u>

As to Defendants DOC, SCI-Mahanoy,[5] and Pennsylvania State Police, the

court does not find these defendants to be suitable entities for a § 1983 claim.

Section 1983 creates a cause of action against every "person" who under color of

state law deprives an individual of a right secured by the Constitution or federal

statute.  *See* 42 U.S.C. § 1983.  Furthermore, the United States Supreme Court

maintains that state agencies are not subject to liability under § 1983 actions brought

in federal court.[6]  *See Howlett v. Rose*, 496 U.S. 356, 365 (1990) ("*Will* [*v. Michigan*

---

[5]  SCI-Mahanoy itself is not docketed as a separate defendant in this action.  To the extent that Beattie has named SCI-Mahanoy under the umbrella of the Department of Corrections as a defendant, the complaint must be dismissed for the same reasons the court is dismissing the complaint against the Department of Corrections and the State Police.  *See infra*.  SCI-Mahanoy is not a "person" within the meaning of § 1983.  Furthermore, Beattie has only requested monetary damages from SCI-Mahanoy which are barred by the Eleventh Amendment.  Therefore, the complaint must be dismissed as to Defendant SCI-Mahanoy.

[6]  Under certain circumstances, the Eleventh Amendment does not bar federal courts from entertaining suits against states.  First, suit is permitted where a state has waived its immunity.  *Atascadero State Hosp. v. Scanlon*, 472 U.S. 234, 241 (1985).  Second, Congress may validly abrogate sovereign immunity through its enforcement powers pursuant to the Fourteenth Amendment.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-57 (1996).  Third, Eleventh Amendment immunity is inapplicable where the plaintiff sues state officials in their official capacities seeking only prospective injunctive relief.  *See Ex parte Young*, 209 U.S. 123, 159-60 1908).  None of these exceptions are present in the instant case.

*Dept. of State Police*, 491 U.S. 58 (1989)] establishes that the State and arms of the

State, which have traditionally enjoyed Eleventh Amendment immunity, are not

subject to suit under § 1983 in either federal or state court.").  The Pennsylvania

Department of Corrections and the Pennsylvania State Police are state agencies, not

persons.  However, even if it could be determined that the Department of Corrections

or the State Police is a "person" within the meaning of § 1983, Beattie has only

requested monetary damages from each one.  A request for monetary damages from a

state agency is barred by the state's sovereign immunity under the Eleventh

Amendment.  *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64

(2001) (explaining private parties cannot sue states in federal court for monetary

damages).  Therefore, the complaint must be dismissed as to Defendants Department

of Corrections and Pennsylvania State Police.

Further, Defendants Youron, Kramer, Klem, Mason, and Kofluk seek dismissal

of the claims that they are liable in their official capacity for violations of Beattie's

constitutional rights.  Official capacity suits are nothing more than suits against an

official's employing agency.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  In this

case, the employing agencies are the Pennsylvania Department of Corrections and the

Pennsylvania State Police, both which are immune from suit in federal court pursuant

16

to the Eleventh Amendment, as set forth above. *See also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (holding that the Eleventh Amendment bars suit in federal court against states and their subordinate agencies). Accordingly, the court will dismiss Beattie's claims against these individual Commonwealth Defendants insofar as they have been sued in their official capacities.[7]

### 2.   Exhaustion of Administrative Remedies / Statute of Limitations

In their motion to dismiss, Commonwealth Defendants seek, in part, dismissal of Beattie's complaint on the grounds that Beattie failed to exhaust his administrative remedies with respect to his claims relating to his removal from the sex offender program at SCI-Mahanoy, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996).

The PLRA requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court.  The act specifically provides as follows:

---

[7]   In their brief in support of the motion to dismiss, Commonwealth Defendants argue that Beattie has not sued these Defendants in their "individual" capacities since he uses the term "private" capacity rather than "individual" capacity in his complaint.  (Doc. 17 at 7 n.2.)  Reading the complaint liberally, the court will construe Beattie's use of the term "private" as to mean "individual."

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  A prisoner must exhaust administrative remedies as to any

claim that arises in the prison setting, regardless of any limitations on the kind of

relief that may be gained through the grievance process.  *See Porter v. Nussle*, 534

U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[I]t is

beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion

requirement, whether on the ground of futility, inadequacy or any other basis."

*Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr.*

*Facility*, 28 F. Supp 2d 884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi*, 422

U.S. 749, 766 (1975)).  The PLRA "completely precludes a futility exception to its

mandatory exhaustion requirement."  *Nyhuis*, 204 F.3d at 71.  The PLRA also

mandates that an inmate "properly" exhaust administrative remedies before filing suit

in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).  "Proper exhaustion

demands compliance with an agency's deadlines and other critical procedural rules

because no adjudicative system can function effectively without imposing some

orderly structure on the course of its proceedings."  *Id*. at 90-91.  Such requirements

"eliminate unwarranted federal-court interference with the administration of prisons,

and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 93 (quoting *Nussle*, 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. *Id*. Therefore, it must be pleaded and proven by the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

The Pennsylvania DOC has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. 37 Pa. Code § 93.9(a); *see also* www.cor.state.pa.us, DOC Policies, Policy No. DC-ADM 804, Inmate Grievance System. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution, and can finally appeal to the Secretary of the DOC Office of Inmate Grievances and Appeals. *See Booth v.*

19

*Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

With respect to the allegations raised in the complaint, there is nothing in the complaint or attached to the pleadings to suggest that Beattie filed or attempted to file a grievance regarding his removal from the sex offender program at SCI-Mahanoy.[8] To the extent that he claims the grievance coordinator at SCI-Mahanoy indicated to him that no action would be taken by the institution to re-enlist him in the program, (Doc. 26 at 3), this statement alone does not demonstrate that it would have been futile to attempt exhaustion under the DOC grievance review process.  However, Beattie also claims that any grievances submitted by him with respect to the sex offender program were "misplaced or ignored" by SCI-Mahanoy officials.  (*Id*. at 8.) Commonwealth Defendants have not submitted any documentation disputing this allegation; rather, they simply deny Beattie exhausted his administrative remedies. Thus, at this stage in the litigation, the court will not dismiss Beattie's claims relating

---

[8]  Attached to his reply brief to the instant motion to dismiss is an inmate request to staff member form completed by Beattie on February 11, 2007.  (Doc. 26 at 22.)  However, Beattie's request relates only to placement in a halfway house following the completion of his term of incarceration and does not set forth any complaint with respect to his removal from the sex offender program.  (*See id*.)

to his removal from the sex offender program for failure to exhaust administrative remedies.

However, Beattie's claims with respect to his removal from the sex offender program in October 2002 are barred by the applicable statute of limitations.  In reviewing the applicability of the statute of limitations to an action filed pursuant to § 1983, a federal court must apply the appropriate state statute of limitations which governs personal injury actions.  *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996).

The United States Supreme Court clarified its decision in *Wilson* when it held that "courts considering § 1983 claims should borrow the general or residual [state] statute for personal injury actions."  *Owens v. Okure*, 488 U.S. 235, 250 (1989); *see also Little v. Lycoming County*, 912 F. Supp. 809, 814 (M.D. Pa.), *aff'd* 101 F.3d 691 (3d Cir. 1996) (Table).  Pennsylvania's applicable personal injury statute of limitations is two years.  *See* 42 Pa. Cons. Stat. § 5524(7); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993).  Finally, the statute of limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action."  *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted).

21

In his complaint, Beattie clearly states that the claims relating to his removal from the sex offender program occurred before January 2004.  In his reply brief to the motion to dismiss, Beattie clarifies his removal as taking place in October 2002.  Thus, Beattie clearly exceeded the statute of limitations with respect to his claims relating to his removal from the sex offender program at SCI-Mahanoy in October 2002 when he filed this complaint in March 2008.[9]  Thus, Beattie's claims are barred by the two-year statute of limitations and should be dismissed on that basis.

### 3.   Challenge to Parole Decision

Commonwealth Defendants seek dismissal of Beattie's claim relating to the denial of his parole based on the fact that § 1983 is not the proper vehicle for such a claim.  Rather, Commonwealth Defendants claim that Beattie should have filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 with respect to this claim, as it challenges the very fact or duration of his confinement.  *See Preiser v.*

---

[9]  To the extent that Beattie avers that Defendants' conduct was continuing in nature and therefore the continuing violation doctrine is applicable to this claim, it is well-settled that the continuing violation doctrine has no applicability to discrete acts or single occurrences.  *See O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006).  A discrete act does not toll the statute of limitations.  *Id*.  Moreover, once a claim for a discrete act is determined to be time-barred, it cannot be resuscitated under the continuing violation doctrine, even if the act is related to acts that would otherwise be timely.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

*Rodriguez*, 411 U.S. 475, 500 (1973).  The court disagrees, but will dismiss Beattie's claim as untimely.

As stated above, Beattie claims that he was improperly removed from the sex offender program at SCI-Mahanoy for assisting other inmates with their homework. This removal, Beattie claims, caused the Pennsylvania Board of Probation and Parole ("Parole Board") to deny him parole on two occasions in 2003 and 2005.  Further, Beattie avers that SCI-Mahanoy officials' failure to reinstate him in the program prior to the maximum date of his sentence denied him "a treatment plan that would have assisted him based on the mandates of the conviction and incarceration, and the expectations of the DOC and the [Parole Board]."  (Doc. 3 at 4.)

This claim, as construed by the court, is not one challenging the decision of the Parole Board.  Rather, the gravamen of Beattie's argument is the content of, and procedures related to, the sex offender program offered at SCI-Mahanoy.[10]  Because

---

[10]   In his response to the Commonwealth Defendants' motion to dismiss, Beattie states,

> [Beattie] is not attacking the sentence, conviction, or State Parole Board. . . . [Beattie] filed a § 1983 for the lack of treatment received that consisted of deliberate indifference to his federally protected rights, a right to have treatment as part of a rehabilitation program that would have enabled him to enter into society sooner and healthier according to the expectations and demands the Commonwealth and the Department of Corrections imposed on him.

(Doc. 25 at 2.)

the Parole Board "has no power to order the prison officials to implement a new program or to change the existing program," *Weaver v. Pa. Bd. of Prob. & Parole*, 688 A.2d 766, 775 (Pa. Commw. Ct. 1997), Beattie's recourse is not by way of a challenge to the denial of parole but by way of an action contesting the constitutionality of the sex offender program at SCI-Mahanoy and the DOC's administration of that program. Such an action is proper under § 1983. However, as set forth above, Beattie's claim relating to his removal from the sex offender program is barred by the two-year statute of limitations. Thus, his challenge here also fails.

### 4. False Arrest and False Imprisonment Claims

Commonwealth Defendants seek dismissal of Beattie's claim relating to his arrest by State Trooper Kofluk for failure to register as a sex offender under Megan's Law and his resulting imprisonment based on the fact that § 1983 is not the proper vehicle for such a claim. Rather, Commonwealth Defendants claim that Beattie should have filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 with respect to this claim, as it challenges the very fact or duration of his confinement.[11]

---

[11] Commonwealth Defendants also claim that under *Heck v. Humphrey*, 512 U.S. 477 (1994), § 1983 is not a vehicle to challenge the lawfulness of a criminal judgment. In doing so, Commonwealth Defendants are seemingly applying *Heck* to Beattie's underlying conviction rather than the subsequent 2007 charge of failing to register as a sex offender under Megan's Law. The court rejects this argument because *Heck* is not applicable to this claim which involves the dismissal of criminal charges rather than a conviction. In a case involving dismissal of criminal charges rather

*See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  The court disagrees and will deny the motion to dismiss with respect to this claim.

In the complaint, Beattie claims that Trooper Kofluk did not have probable cause to arrest him for failing to provide a forwarding address as part of his registration as a sex offender under Megan's Law.  In support of that claim, Beattie asserts that he had secured a place in a shelter in Philadelphia following his release from incarceration, but Defendant Mason refused to provide that information to the Pennsylvania State Police.  (Doc. 3 at 14.)  Rather, Defendant Mason reported Beattie to the State Police for failing to accept a place in a shelter in Reading, Pennsylvania that she had secured prior to his release.  (*Id*.)  As a result of his arrest, Beattie argues, he was falsely imprisoned in the Schuylkill County Prison while awaiting trial on the failure to register charges, which were later dropped.

---

than a conviction, the Third Circuit held that "a claim that, if successful, would necessarily imply the invalidity of a conviction on a pending criminal charge is not cognizable under § 1983." *Smith v. Holtz*, 87 F.3d 108, 113 (3d Cir. 1996).  In *Smith*, the plaintiff filed a § 1983 complaint asserting unlawful confinement claims against certain government officials after the charges against him were dismissed.  The issue in that case was whether the plaintiff's § 1983 claims were time-barred by the applicable statute of limitations because they accrued when the plaintiff's criminal conviction was reversed by Pennsylvania Supreme Court, rather than after the charges were eventually dropped.  *Id*. at 111.  The court found, however, that his claims were timely because he did not file them until after the charges were dismissed.  *Id*. at 113.  In the instant case, as in *Smith*, Beattie did not file his § 1983 complaint asserting claims of unlawful arrest and false imprisonment until after the charges against him were dismissed.  Because Beattie does not have a pending criminal charge for failure to register under Megan's Law, this civil rights action would not call into question the validity of any potential conviction.  Therefore, *Heck* is inapplicable here.

In their motion to dismiss, Commonwealth Defendants claim that Beattie

should have sought a writ of habeas corpus with respect to these claims rather than

file the instant § 1983 complaint.[12]   However, at the time Beattie filed the instant

complaint, not only had he already served the maximum sentence on his underlying

conviction, but the failure to register under Megan's Law charge had already been

dismissed and Beattie was no longer being held in Schuylkill County Prison on that

separate charge.  It is well-established that an arrest without probable cause is a

constitutional violation actionable under § 1983.  *See Patzig v. O'Neil*, 577 F.2d 841,

848 (3d Cir. 1978); *see also Albright v. Oliver*, 510 U.S. 266, 274 (1994) (a § 1983

claim for false arrest may be based upon an individual's Fourth Amendment right to

---

[12]   Commonwealth Defendants also assert in a footnote in their reply to Beattie's opposition to the motion to dismiss that Beattie's refusal to accept a place in the shelter in Reading arranged by Defendant Mason does not constitute a constitutional violation by Defendants.  (*See* Doc. 28 at 9 n.11.)  This argument, however, is misplaced.  Beattie is claiming that he did, in fact, secure a place in a shelter in Philadelphia prior to his release from incarceration and informed Defendant Mason of that fact, yet Defendant Mason informed the State Police of Beattie's failure to secure an address anyway.  He also seems to suggest that Defendant Kofluk was aware of this, but arrested Beattie nevertheless.

Commonwealth Defendants also assert that a 2003 letter attached to Beattie's reply to the motion to dismiss demonstrates that Beattie had no address at which to register upon leaving prison. (*Id.*)  However, Beattie was not released until 2007.  From Beattie's other averments set forth in the complaint relating to his efforts to secure an address in Philadelphia upon his release in 2007, it is reasonable to infer that the 2003 letter does not rule out the possibility that Beattie had a Philadelphia address in 2007.

Furthermore, the court finds this brief footnote to be a deficient counter to Beattie's arguments with respect to an alleged false arrest and false imprisonment.  At this stage of the litigation, the court is reluctant to dismiss these claims simply based on the assertions in this cursory footnote.

be free from unreasonable seizures).  Furthermore, an individual can seek damages

for false arrest and false imprisonment,[13] as Beattie does here.  However, the common

law tort of false arrest (or false imprisonment) allows a plaintiff to seek damages only

from the time of detention "up until issuance of process or arraignment, but not

more."  *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000) (citation omitted).  The

existence of probable cause defeats any such claim.[14]  Thus, the motion to dismiss

with respect to the claims of false arrest and false imprisonment will be denied.[15]

---

[13]   The court recognizes that false arrest and false imprisonment often overlap.  *See Gagliardi v. Lynn*, 285 A.2d 109, 111 (Pa. 1971).  As explained in 1 Dan Dobbs, The Law of Torts 67 (2001):

> False arrest is a term that describes the setting for false imprisonment when it is committed by an officer or by one who claims the power to make an arrest.  Although false arrest is not essentially different from false imprisonment, detention by an officer or one acting under color of law may also amount to a civil rights violation.

*Id.*

[14]   Recovery of damages for the period of time between arrest and arraignment depends on the existence of probable cause for arrest.  *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) ("an arrest based on probable cause could not become the source of a claim for false imprisonment"); *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 852 (E.D. Pa. 2000) ("a claim for false imprisonment cannot be based on an arrest based on probable cause"); *Wagner v. Waitlevertch*, 774 A.2d 1247, 1253 (Pa. Super. 2001) ("The central issue in determining liability in a Section 1983 action based on a claim of false arrest is 'whether the arresting officers had probable cause to believe the person arrested had committed the offense'.") (citation omitted).  Probable cause "exists when the facts and circumstances are sufficient to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  *Id.*  Thus, should Beattie be unable to establish that he was falsely arrested, the false imprisonment claim would also fail.

[15]   The court notes here, without giving any opinion as to the merits of a claim, that Beattie's claim may also be construed as alleging a cause of action for malicious prosecution against the charging officer for deprivation of his rights under the Fourth and Fourteenth Amendments.  *See Albright v. Oliver*, 510 U.S. 266, 274 (1994) (holding that a plaintiff's claim for malicious

Further, the court will afford Beattie an opportunity to amend his complaint to further articulate allegations as to Defendants Mason and Kofluk's conduct with respect to the events leading up to and involving his alleged false arrest and false imprisonment.[16]

## IV.  **Conclusion**

For the reasons set forth above, the court will grant the DA Defendants' motion to dismiss as they are entitled to absolute immunity from suit.  The court will also

---

prosecution arising out of an arrest and incarceration based on a warrant unsupported by probable cause did not trigger the plaintiff's substantive due process rights, rather, the plaintiff's constitutional claim, if any, implicated only the Fourth Amendment).

[16] In preparing his amended complaint, Beattie is advised that, among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2). *Id.*; *see also Evancho*, 423 F.3d at 350.

To meet the standards set forth in Rule 8, the complaint must at least contain a modicum of factual specificity, identifying the defendants and the particular conduct of the defendants purported to have harmed the plaintiff.  "A complaint which contains a bare bones allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice." *Purveegiin v. Pike County Corr. Facility*, No. 3:06-CV-0300, 2006 WL 1620219 (M.D. Pa. June 6, 2006).

In addition, Beattie is advised that the "amended complaint must be complete in all respects.  It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  Additionally, it must specify the existence of actions by defendants which have resulted in constitutional deprivations. *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 370-73 (1976).

grant the Judicial Defendants' motion to dismiss, as they are entitled to absolute

judicial immunity.  Finally, the court will grant in part and deny in part the

Commonwealth Defendants' motion to dismiss, and afford Beattie the opportunity to

amend his complaint with respect to the allegations against Defendants Mason and

Kofluk.

     An appropriate order follows.


                                            s/Sylvia H. Rambo
                                         United States District Judge

Dated:  March 3, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTONIO S. BEATTIE,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-08-00622** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **DEPARTMENT OF CORRECTIONS** | : | |
| **SCI-MAHANOY,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

# O R D E R

For the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The motion to dismiss the complaint (Doc. 20) filed by James P. Goodman, Esquire, and William Reiley, Esquire, is **GRANTED**.

2) The motion to dismiss the complaint (Doc. 11) filed by Schuylkill County District Justice William A. Slezosky and Schuylkill County Court of Common Pleas Judge Charles L. Miller, is **GRANTED**.

3) The motion to dismiss the complaint (Doc. 16) filed by the Pennsylvania Department of Corrections, Edward Klem, Lorraine Kramer, Barbara Mason, Michael Youron, Pennsylvania State Police, and Shawn Kofluk is **GRANTED** in part and **DENIED** in part as follows:

a) The motion to dismiss (Doc. 16) is **GRANTED** as to Pennsylvania Department of Corrections and Pennsylvania State Police, Edward Klem, Lorraine Kramer, and Michael Youron.  The motion to dismiss is also **GRANTED** as to the individuals set forth above, as well as Defendants Mason and Kofluk, being sued in their official capacities.

b) The motion to dismiss (Doc. 16) is **DENIED** as to Barbara Mason and Shawn Kofluk, being sued in their individual capacities.

4) Plaintiff may amend his complaint within twenty (20) days to provide more specific allegations as to the actions of Defendants Mason and Kofluk leading up to and involving Plaintiff's alleged false arrest and false imprisonment.

s/Sylvia H. Rambo
United States District Judge

Dated:  March 3, 2009.