IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTONIO S. BEATTIE,                    :
                                       :
            Plaintiff                  :        CIVIL NO. 1:CV-08-00622
                                       :
      v.                               :        (Judge Rambo)
                                       :
MASON, *et al.*,                       :
                                       :
            Defendants                 :

## M E M O R A N D U M

Plaintiff Antonio S. Beattie ("Beattie") initiated this action with a civil rights complaint pursuant to 42 U.S.C. § 1983 on March 31, 2008, as amended on March 23, 2009. (Doc. 54.) Beattie asserts claims for false arrest and false imprisonment, as well as a construed claim of malicious prosecution. Pending before the court is motion for summary judgment, filed on behalf of Defendants Bernadette Mason[1] and Pennsylvania State Trooper Shawn Kofluk. (Doc. 62.) For the reasons set forth below, the motion for summary judgment will be granted.

---

[1] Beattie initially named Barbara Mason as a defendant; however, as asserted by Defendants in the instant motion, it is believed that Beattie intended to sue Bernadette Mason, who, during the relevant time period, was employed at SCI-Mahanoy. (*See* Doc. 63 at 6 n.1.) As Beattie has concurred with this change in the named Defendant (*see* Doc. 65 at 1), the court will construe the claims as against Bernadette Mason rather than Barbara Mason.

## I.    Background

### A.    Facts

In support of their motion for summary judgment, Defendants have submitted a statement of material facts.  (Doc. 64.)  In response, Beattie has filed a counter statement of material facts in which he generally objects to Defendants' statement. (*See* Doc. 66) ("Plaintiff denies all the statements of the defendants in their Statement of Material Facts as distortions and complete lies contradictory to his material facts . . . .")  After reviewing the record on summary judgment, the court finds that the record belies Beattie's allegations of "distortions and complete lies," as Beattie has failed to support such allegations with any evidence.  As a result, the court will not reject Defendants' statement of material facts; rather, the court will simply note any factual disputes between the parties.  *See* Fed. R. Civ. P. 56(e)(2) ("an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial.")

Beattie, a convicted sex offender, was incarcerated at the State Correctional Institution at Mahanoy ("SCI-Mahanoy") in Frackville, Pennsylvania, with a maximum sentence date of May 21, 2007.  (Doc. 64 ¶¶ 2-3.)  As an inmate maxing out on his sentence, Beattie had the responsibility to have appropriate housing upon

his release from prison.  (*Id.* ¶ 3.)  Defendant Mason, who served as his counselor at SCI-Mahanoy from 2002 to his release date, informed him of this responsibility several times before his release date.  (*Id.* ¶ 3.)  Specifically, Beattie filed an inmate request to staff member on February 11, 2007, making the following request: "My maximum release is May 21, 2007 and I need a resident because I am a sex offender. I was hoping you could put me in a halfway house and a sex offender program." (Doc. 64-3, Ex. A, Inmate Request to Staff Member, 7.)  In response, Defendant Mason informed Beattie that "[t]he DOC [Department of Corrections] does not provide halfway house placement for inmates that are maxing out their sentences." (*Id.*)  In his counter statement of material facts, Beattie asserts that "[i]t was also the DOC's responsibility to aid him in seeking reasonable housing or temporary shelter until he could fully establish a more certain foundation due to Megan's Law."  (Doc. 66 ¶ 1.)

Notwithstanding Beattie's responsibility to find housing upon his maxout release date, Defendant Mason agreed to assist Beattie with placement in a shelter. (Doc. 64 ¶ 4.)  She contacted several shelters in Philadelphia; however, because of Beattie's status as a sex offender, these shelters would not agree to house Beattie upon his release.  (*Id.* ¶ 5.)  In his counter statement of material facts, Beattie asserts that

3

Defendant Mason did not contact the Ridge Avenue Shelter in Philadelphia,

Pennsylvania, despite knowing of its willingness to place former inmates there.  (Doc.

66 ¶ 2.)  As further evidence of Defendant Mason's knowledge of the Ridge Avenue

Shelter, Beattie asserts that she knew of a 2003 letter he received from Philadelphia's

Office of Emergency Shelter and Services ("OESS"), which notified Beattie of the

eligibility requirements for placement in the Ridge Avenue Shelter.  (*Id*.)  Beattie

asserts that Defendant Mason used this letter to place another inmate, Donald Coles, in

that shelter upon his release from prison in 2005.  (*Id*.)  This letter from OESS to

Beattie, dated May 15, 2003, approximately four years before the date of Beattie's

release, states the following:

> This letter is to acknowledge receipt of your letter expressing interest in
> relocating to the Philadelphia Shelter System through the Office of
> Emergency Shelter and Services (O.E.S.S.), upon release from prison.
>
> Due to federal funding guidelines, anyone on state probation or parole is
> not eligible for services within the Philadelphia Shelter System.  You or
> your counselor should contact your probation/parole officer for a housing
> plan.
>
> If you are not, or do not expect to be on state probation/parole, you may
> be considered for services if you meet the following criteria:
>
> > Resident of Philadelphia for at least 30 days prior to your
> > incarceration.
> > Homeless and with no housing resources (money, family,
> > friends, etc.) available upon release.

OESS does not reserve or identify beds in shelter as part of a "home plan." If you meet the criteria above, you may present yourself to one of the following reception sites after release:

> Single men to 1360 Ridge Ave. (24-hours a day, 7 days a week)
> Single women/families to 141 North Juniper Street (7am to 4pm Monday through Friday) or to 1320 Arch Street, Eliza Shirley House (evenings and weekends).

(Doc. 65-2, Ex. M4, OESS 2003 Letter, 17.)

On May 11, 2007, Defendant Mason received the following email from an SCI-Mahanoy records specialist:

> As per our phone conversation today 05-11-07, I will need a forwarding address to register the inmate for Megan's Law on or before Wednesday 05-16-07 as he will maxout on 05-21-07. PLEASE inform the inmate if we do not get an address for registration I must then contact PSP and have them pick up the inmate.

(Doc. 64-3, Ex. B, Email, 11.) On May 15, 2007, Defendant Mason received another email from the records specialist, stating the following: "Please forward the inmate's registering address to me this morning so I can process his Megan's Law paperwork. Or if he has no forwarding address please let me know so the Security Office can notify the PSP [Pennsylvania State Police] to make arrangements to have the inmate picked up." (*Id.*)

On May 16, 2007, an SCI-Mahanoy official emailed Trooper Kofluk to inform him that Beattie was going to be released on May 21, 2007, but had not yet been able to provide DOC officials with a forwarding address, as required by Megan's Law. (Doc. 64 ¶ 6; Doc. 64-3 at 12.) Further, if Beattie could not secure housing upon his release, Trooper Kofluk would be required to arrest him at SCI-Mahanoy. (*Id*.) Defendant Mason was copied on this email. (*Id*.)

> Another email was sent on May 17, 2007, noting:
>
> This inmate will maxout on Monday 05-21-07 he is serving 8Y to 16Y for Rape. I have not registered him under Megan's Law as he cannot provide a forwarding address for the registration forms. I had our Security Captain (Gavin) notify the Frackville PSP barracks to make arrangements for pick up on Monday. I'm just giving your unit {PSP Megan's Law} [sic] a notification should I get a last minute forwarding address for registration.

(*Id*. at 10.) Defendant Mason was copied on this email. (*Id*.)

Shortly before Beattie's maxout date, Defendant Mason contacted Prison Society in an attempt to locate a residence for Beattie. (Doc. 64 ¶ 7.) In response, Prison Society forwarded an application for consideration of Beattie's placement in the New Person Center in Reading, Pennsylvania. (*Id*. ¶ 8.) Beattie would have been charged with a small monthly fee for placement in this facility. (*Id*. ¶ 10.) On May 19, 2007, Beattie met with John Rush, a Prison Society member and the Executive

Director of Justice and Mercy, Inc., which owns the New Person Center, to determine if he was eligible for the facility. (*Id*. ¶ 9.) However, Beattie refused to be placed in the facility because of the monthly fee and a religious issue. (*Id*. ¶ 10; Doc. 64-3 at 9.) In his counter statement of material facts, Beattie states that it is irrelevant that he declined placement in the New Person Center because "he made it clear that the shelter in Philadelphia at Ridge Avenue would accept him." (Doc. 66 ¶ 2.) However, Defendant Mason asserts that at no time prior to his release did Beattie tell Defendant Mason that he had a place to stay in Philadelphia or elsewhere. (Doc. 64 ¶ 11.) Had Beattie provided Defendant Mason with a verifiable address, she would have noted it on the Megan's Law registration prior to his release. (*Id*.) Nevertheless, Defendant Mason continued her efforts to find housing for Beattie until his release date. (*Id*. ¶ 12.)

On May 21, 2007, Beattie was released from SCI-Mahanoy after serving his maximum sentence. (*Id*. ¶ 13.) In his counter statement of facts, Beattie asserts that he was accepted at the Ridge Avenue Shelter prior to his release. (Doc. 66 ¶ 3.) However, there is nothing in the record supporting this assertion. Rather, Defendants assert that upon Beattie's release date, he did not have a place to live. (Doc. 64 ¶ 14.)

As a result, Beattie was unable to complete the Megan's Law registration and thus was in violation of Megan's Law upon his release. (*Id.*)

An SCI-Mahanoy employee contacted Trooper Kofluk on May 21, 2007 to inform PSP of Beattie's release and that he was unable to complete the Megan's Law registration due to a lack of a verifiable address.[2] (*Id.* ¶¶ 14-15.) In turn, Trooper Kofluk confirmed with SCI-Mahanoy and PSP's Megan's Law section that Beattie was required to register under Megan's Law and that his failure to do so was a violation of Section 4915 of Megan's Law. (*Id.* ¶ 16.) Trooper Kofluk also contacted the Schuylkill County District Attorney's Office, who advised him that charges should be filed against Beattie for the violation. (*Id.*) Trooper Kofluk also completed a criminal history check on Beattie to verify that he was required to register under Megan's Law and that his failure to provide a verifiable address constituted a violation of Megan's Law. (*Id.*) In addition, Trooper Kofluk spoke with a Lieutenant Datchko from SCI-Mahanoy, who confirmed again on May 21, 2007 that Beattie had not found a place to live upon his release. (*Id.*)

After conducting his investigation, Trooper Kofluk went to SCI-Mahanoy on May 21, 2007 to take Beattie into custody for the violation of Megan's Law. (*Id.* ¶

---

[2] Defendant Mason did not have any contact with PSP regarding Beattie's release. (Doc. 64 ¶ 14.)

8

17.) Trooper Kofluk immediately transported Beattie to the office of Magistrate Slezosky, where he was arraigned on the charge of failing to register under Megan's Law. (*Id*.) Bail was set at $2,500.00. (*Id*.) Beattie could not make bail and he was resultantly transported to the PSP barracks in Frackville where he was fingerprinted and photographed. (*Id*.) In addition, a Megan's Law registration was completed noting Beattie's address as the Schuylkill County Prison. (*Id*.)

In Defendants' statement of material facts, Defendants set forth the following exchange between Trooper Kofluk and Beattie on May 21, 2007. (*See id*. ¶¶ 18-19.) Before arresting Beattie, Trooper Kofluk asked him if he had a place to go and Beattie responded that he did not. (*Id*. ¶ 18.) Trooper Kofluk informed Beattie that if he could provide, at that time, a verifiable address, he would not be arrested. (*Id*.) Beattie confirmed that he could not provide a verifiable address at that time. (*Id*.) Trooper Kofluk then explained to Beattie why he was being arrested and Beattie responded that everything had already been explained to him. (*Id*. ¶ 18.) Trooper Kofluk asked Beattie why, after knowing of his maxout date for months, he had not found a place to live. (*Id*.) Beattie stated that he found it difficult to find housing that would accept Megan's Law offenders and that he was not having luck finding a residence. (*Id*.) Further, while Trooper Kofluk was transporting Beattie to Magistrate

Slezosky's office, the two continued their discussion about Beattie's difficulties in finding a place to live. (*Id.* ¶ 19.) Beattie told Trooper Kofluk that he hoped to be accepted into a shelter in Philadelphia. (*Id.*)

In his counter statement of material facts, Beattie denies that he had such discussions with Trooper Kofluk. (Doc. 66 ¶¶ 3-4.) Specifically, Beattie states that he told Trooper Kofluk that he was "going to get a bus back to Philadelphia because he was accepted at the Ridge Avenue Shelter." (*Id.* ¶ 4.) He claims that Trooper Kofluk refused to believe him or let him show the Trooper the 2003 letter from OESS about the shelter. (*Id.*) He also claims that he never made statements to Trooper Kofluk about hoping to be accepted into a shelter in Philadelphia. (*Id.*)

Further, Defendants assert in their statement of material facts that at Beattie's preliminary hearing in June 2007, Trooper Kofluk had a discussion with Assistant District Attorney Michael O'Pake, Beattie, and his attorney William Burke, in which he asked Beattie if he had secured to a place to live, and Beattie responded that he had not done so. (Doc. 64 ¶ 20.) Beattie was told that if he could find a residence, he would be released and the charges would be dropped. (*Id.*)

In his counter statement of material facts, Beattie generally denies these facts. (Doc. 66 ¶ 4.) Rather, Beattie asserts that he "continuously referred to the 2003 letter

he had from the shelter but they would not let him present this as evidence or as a possibility for the sake of having an address." (*Id.*) He also states that a letter from the Office of Supportive Housing in Philadelphia dated June 8, 2007,[3] corroborates his assertions with respect to having a residence upon his release. (*Id.*) This June 8, 2007 letter states the following:

> This letter is to acknowledge receipt of your letter expressing interest in relocating to the Philadelphia Shelter System through the Office of Supportive Housing (O.S.H.), upon release from prison.
>
> The eligibility requirements for shelter are:
>
> Resident of Philadelphia for at least 30 days prior to your incarceration and homeless, with no housing resources (money, family, friends, etc.) available upon release.
>
> OSH does not reserve or identify beds in shelter as part of a "home plan." If you meet the criteria above, you may present yourself to one of the following reception sites after release:
>
> Single men to 1360 Ridge Ave. (24-hours a day, 7 days a week)
> Single women/families to 141 North Juniper Street (7am to 4pm Monday through Friday) or to 1320 Arch Street, Eliza Shirley House (evenings and weekends).
>
> If possible, you should bring personal identification with you and a five-day supply of any prescribed medications.

---

[3] The court takes judicial notice that OESS is the predecessor to the Office of Supportive Housing.

As shelter is emergency/temporary housing, we expect all shelter residents to participate in a social service plan developed with a case manager and work toward obtaining transitional and/or permanent housing as quickly as possible. In addition, you will be expected to comply with a recommended treatment plan to address any/all mental health, substance abuse or medical issues.

The goal for all eligible clients is to participate with a case manager and a social service plan and move on to some type of subsidized or independent housing as quickly as possible.

We wish you success.

(Doc. 65-2, Ex. P9, 2007 Letter, 22-23.)

On October 18, 2007, the charges against Beattie was dropped by the Schuylkill County Court of Common Pleas and Beattie was released from Schuykill County Prison.[4] (Doc. 65-2 at 5.) Upon his release, he resided at the Ridge Avenue Shelter in Philadelphia. (*Id.*)

B. **Procedural History**

Beattie filed the instant § 1983 complaint in this court on March 31, 2008, seeking compensatory and punitive damages against all Defendants based on his removal from the sex offender program and the events subsequent to that removal. (Doc. 3.) By order dated May 27, 2008, the court directed service of the complaint on

---

[4] The record on summary judgment does not expressly indicate why the charges against Beattie were dropped, but implies that they were dropped because Beattie had secured a residence at the Ridge Avenue Shelter. (*See* Doc. 66 ¶ 4.)

the named defendants.  (Doc. 8.)  Three sets of Defendants filed motions to dismiss the complaint.[5]  (*See* Docs. 11, 16, 20.)  By memorandum and order dated March 3, 2009, the court granted the motions to dismiss as to the DA Defendants and the Judicial Defendants.  (Doc. 49.)  Further, the court granted in part and denied in part the motion to dismiss filed by the Commonwealth Defendants.  (*Id*.)  Specifically, the court dismissed all Commonwealth Defendants except Defendants Mason and Kofluk. (*Id*.)  Additionally, the court granted Beattie leave to amend his complaint to provide more specific allegations as to the actions of Defendants Mason and Kofluk leading up to and involving Beattie's alleged false arrest and false imprisonment.  (*Id*.)

Beattie filed his amended complaint on March 23, 2009.[6]  (Doc. 54.) Thereafter, Defendants Mason and Kofluk filed the instant motion for summary

---

[5]  The first set of Defendants included James P. Goodman, Esquire, Schuylkill County District Attorney, and William Reiley, Esquire, former Schuylkill County Assistant District Attorney (collectively, "DA Defendants").  The second set of Defendants included Magistrate District Judge William Slezosky, and Schuylkill County Court of Common Pleas Judge Charles Miller ("Judicial Defendants").  The third set of Defendants included the Pennsylvania Department of Corrections, Edward Klem, Barbara Mason, Michael Youron, Pennsylvania State Police, Lorraine Kramer, and Shawn Kofluk (collectively, "Commonwealth Defendants").

[6]  Beattie also filed an interlocutory appeal of the court's decision on the motions to dismiss with the Third Circuit Court of Appeals.  (*See* Doc. 53.)  On July 9, 2009, the Third Circuit dismissed the appeal for lack of jurisdiction because the order appealed from did not terminate all of the claims against all of the parties, as the claims against Defendants Mason and Kofluk are still pending before this court.  (*See* Doc. 58.)

judgment. (Doc. 62.) Responsive briefing has been filed; thus, the instant motion for summary judgment is now ripe for disposition.

## II.    **Standard of Review - Summary Judgment**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III. <u>Discussion</u>

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant's conduct must have a close causal

connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[7] A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Nevertheless, it is well-settled that certain government officials possess immunity from § 1983 liability. *Id*.

In his amended complaint, Beattie asserts claims of false arrest, false imprisonment, and malicious prosecution against Defendants Mason and Kofluk in connection with his arrest and resulting imprisonment for failing to register under Megan's Law. (Doc. 54.) More specifically, Beattie claims that Trooper Kofluk did not have probable cause to arrest him for failing to provide a forwarding address as part of his registration as a sex offender under Megan's Law. In support of that claim, Beattie asserts that he had secured a place at the Ridge Avenue Shelter in Philadelphia following his release from incarceration, but Defendant Mason refused to provide that

---

[7] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

information to PSP.  Rather, Defendant Mason reported Beattie to PSP for failing to accept a place in the shelter in Reading that she had attempted to secure for him prior to his release.  As a result of his arrest, Beattie argues, he was falsely imprisoned in the Schuylkill County Prison while awaiting trial on the failure to register charges, which were later dropped.

In their brief in support of the instant motion, Defendants have raised the issue of qualified immunity.  The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known."  *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808, 815 (2009).  This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Application of qualified immunity implicates two distinct inquiries.  The first evaluates whether the defendant violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated in part by Pearson*, 129 S. Ct. 808; *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007); *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir.

2006).  If the defendant did not commit a constitutional infraction, the court must dispose of the claim in the defendant's favor.  *Saucier*, 533 U.S. at 201.  If the defendant committed a constitutional violation, the second inquiry assesses whether the right in question was "clearly established" at the time the defendant acted.  *Pearson*, 129 S. Ct. at 816; *Saucier*, 533 U.S. at 201-02.  A right is "clearly established" if a reasonable state actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates.  *Pearson*, 129 S. Ct. at 816.  Further, the Third Circuit has stated that "[A] right is clearly established for the purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008) (quoting *Williams*, 455 F.3d at 191).  This standard "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"  *Hubbard*, 538 F.3d at 236 (quoting *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005)).  The court is not required to conduct the inquiries sequentially,[8] and it may eschew difficult

---

[8]  In *Pearson*, the Supreme Court held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 129 S. Ct. at 818.

constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. *Pearson*, 129 S. Ct. at 820.

Proceeding under the above framework, the court first will examine Beattie's constitutional claims to determine whether there is prima facie evidence of those claims. Should there be sufficient evidence of Beattie's constitutional claims, the court will determine next whether Defendants Mason and Kofluk enjoy qualified immunity on those claims. However, should the court find no constitutional violation, it will dispose of Beattie's claims in favor of Defendants.

## A.    <u>False Arrest and False Imprisonment Claims</u>

Claims of false arrest and false imprisonment under the Fourth Amendment require a plaintiff to show that he or she was arrested without probable cause.[9] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634-35 (3d cir. 1995); *see also Berg v. County of Allegheny*, 219 F.3d 261, 268-69 (3d Cir. 2000). Probable cause to arrest

---

[9] The court recognizes that false arrest and false imprisonment often overlap. *See Gagliardi v. Lynn*, 285 A.2d 109, 111 (Pa. 1971). As explained in 1 Dan Dobbs, The Law of Torts 67 (2001):

> False arrest is a term that describes the setting for false imprisonment when it is committed by an officer or by one who claims the power to make an arrest. Although false arrest is not essentially different from false imprisonment, detention by an officer or one acting under color of law may also amount to a civil rights violation.

*Id.*

19

requires "proof of facts and circumstances that would convince a reasonable, honest" officer that the person arrested has committed a crime. *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993); *see Wright v. City of Phila.*, 409 F.3d 595, 601-02 (3d Cir. 2005). Thus, "the constitutional validity of the arrest does not depend on whether the suspect actually committed a crime," but whether the police had probable cause to believe that the individual committed those crimes at the time of his or her arrest. *Wright*, 409 F.3d at 602; *Groman*, 47 F.3d at 634; *see also Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released."). Further, claims of false arrest or false imprisonment allow a plaintiff to seek damages only from the time of detention "up until issuance of process or arraignment, but not more." *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000) (citation omitted). Recovery of damages for the period of time between arrest and arraignment depends on the existence of probable cause for arrest. *Groman*, 47 F.3d at 636 ("an arrest based on probable cause could not become the source of a claim for false imprisonment"). Thus, the existence of probable cause defeats these claims. *See Wagner v. Waitlevertch*, 774 A.2d 1247, 1253 (Pa. Super. 2001) ("The central issue in determining liability in a Section 1983 action based on a

claim of false arrest is 'whether the arresting officers had probable cause to believe the person arrested had committed the offense'.") (citation omitted).

The appropriateness of an arrest in a given scenario necessarily turns on the nature of the crime in question. *Wright*, 409 F.3d at 602. In the instant case, Beattie was arrested for failing to register under Megan's Law. As a result, the court's inquiry will focus on the registration requirements under Megan's Law, and the penalties for failing to register, in order to determine if there was probable cause for Beattie's arrest.

On October 24, 1995, Governor Ridge signed into law Pennsylvania's Megan's Law. Under Pennsylvania's Megan's Law, an individual convicted of an offense enumerated in 42 Pa. Cons. Stat. § 9795.1[10] must register with the Pennsylvania State Police and provide information related to his current or intended residence, employment, and educational enrollment upon the release from incarceration, parole from a correctional institution, or commencement of an intermediate punishment or

---

[10] In its current form, registration is required under § 9795.1 after a conviction for any of the following offenses: kidnapping where the victim is a minor; luring a child into a motor vehicle or structure; institutional sexual assault; indecent assault where the offense is graded as a misdemeanor of the first degree or higher; incest where the victim is under 18 years of age; prostitution and related offenses where the actor promotes the prostitution of a minor; obscene and other sexual material and performances where the victim is a minor; sexual abuse of children; unlawful contact with minor; sexual exploitation of children; rape; involuntary deviate sexual intercourse; sexual assault; aggravated indecent assault; and attempt of any of the above.

probation. 42 Pa. Cons. Stat. § 9795.2(a)(1). Additionally, the individual must inform the state police within 48 hours of any changes related to the individual's residence, employment, or educational enrollment. *Id*. § 9795.2(a)(2). This section also sets forth the following:

> Where the offender or sexually violent predator scheduled to be released from a State correctional facility or county correctional facility due to the maximum expiration date refuses to provide the registration information, the Department of Corrections or county correctional facility shall notify the Pennsylvania State Police or police department with jurisdiction over the facility of the failure to provide registration information and of the expected date, time and location of the release of the offender or sexually violent predator.

*Id*. § 9795.2(a)(4)(ii).

Should the individual fail to comply with these registration requirements, 18 Pa. Cons. Stat. § 4915 imposes criminal penalties with minimum penalties of at least two years depending on the offense. Specifically, 18 Pa. Cons. Stat. § 4915 provides the following:

> An individual who is subject to registration under 42 Pa. Cons. Stat. § 9795.1(a) (relating to registration) or an individual who is subject to registration under 42 Pa. Cons. Stat. § 9795.1(b)(1), (2) or (3) commits an offense if he knowingly fails to:
>     (1) register with the Pennsylvania State Police as required under 42 Pa. Cons. Stat. § 9795.2 (relating to registration procedures and applicability);
>     (2) verify his address and be photographed as required under 42 Pa. Cons. Stat. 9796 (relating to verification of residence); or

(3) provide accurate information when registering under 42 Pa.
Cons. Stat. 9795.2 or verifying an address under 42 Pa. Cons. Stat. 9796.

*Id*. § 4915(a).

Construing the facts in a light most favorable to Beattie, the court concludes that a reasonable jury could not conclude that Defendants lacked probable cause sufficient to effectuate the arrest. There is no evidence that Beattie provided anyone at SCI-Mahanoy with a verifiable intended address prior to his maxout date. While Defendant Mason attempted to assist Beattie in securing a residence, her attempts certainly were not required under the Megan's Law registration requirements. Those requirements are clear that it is the individual's responsibility alone, and not the responsibility of the Department of Corrections, to secure a residence prior to release from incarceration on a maximum sentence. *See* 42 Pa. Cons. Stat. § 9795.2(a).

Furthermore, the court rejects Beattie's assertion that the 2003 and 2007 letters indicate he had been accepted for placement in the Ridge Avenue Shelter at the time of his release. First, by his own admission evidenced in his inmate request to staff member dated February 11, 2007, Beattie did not have a forwarding address at that time. (*See* Doc. 64-3 at 7.) Thus, again by Beattie's own admission, the 2003 letter did not serve as "acceptance" into the shelter. Rather, it only outlined the eligibility requirements for placement in the shelter. Second, the 2007 letter post-dated Beattie's

23

release from incarceration, and thus is not relevant to the issue of whether he had secured a residence prior to release. Third, as set forth above, these letters do not serve as "acceptance" into the shelter. As they both state, beds are not reserved in advance. And while Beattie may qualify for a bed at the shelter, this qualification does not eliminate the requirement that he register his current or intended residence under Megan's Law prior to his maxout release date. Unlike some other inmates released on their maxout dates, convicted sex offenders are required to inform authorities of their actual or intended address prior to release. *See* 42 Pa. Cons. Stat. § 9795.1(a). Simply put, this is not a case where Beattie, a convicted sex offender required to register under Megan's Law, can "get a bus back to Philadelphia" without first informing the authorities of a verifiable intended address.[11] As a result, there existed probable cause to effectuate the arrest.

Because the court has determined there exists no dispute of fact concerning the presence of probable cause, Beattie's claims for false arrest and false imprisonment must fail. Further, since Beattie has failed to establish that a constitutional right was violated, Defendants are entitled to qualified immunity with

---

[11] From a reading of his amended complaint, Beattie seemingly believes that he had 48 hours from the time of his release to inform state police of his current or intended residence. (Doc. 54 at 3.) This is not the case. Under 42 Pa. Cons. Stat. § 9795.2(a)(2), an individual has 48 hours to inform state police of any *changes* to his residence, employment, or educational enrollment. *Id.*

respect to the false arrest and false imprisonment claims. Summary judgment shall be granted in favor of Defendants.

### B. Malicious Prosecution

The probable cause inquiry is also the dispositive element in Beattie's malicious prosecution claim. A cause of action for malicious prosecution requires a plaintiff to demonstrate that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009); *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). To establish a prima facie case, a plaintiff must establish each of these factors by a preponderance of the evidence. *Kossler*, 564 F.3d at 186.

In the instant case, as the court has explained, *supra*, a reasonable jury could not conclude that Defendants lacked probable cause with which to arrest Beattie. Without probable cause, Beattie cannot demonstrate a claim for malicious prosecution. Because Beattie has failed to establish that a constitutional right was violated,

Defendants are entitled to qualified immunity with respect to the malicious prosecution claim.  Summary judgment shall be granted in favor of Defendants.

## IV.    Conclusion

For the reasons set forth herein, the motion for summary judgment will be granted in favor of Defendants.

An appropriate order will issue.

s/Sylvia H. Rambo<br>
United States District Judge

Dated:  April 7, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ANTONIO S. BEATTIE,**                    :
                                           :
        **Plaintiff**              :      **CIVIL NO. 1:CV-08-00622**
                                           :
    **v.**                             :      **(Judge Rambo)**
                                           :
**MASON,** *et al.*,                       :
                                           :
        **Defendants**              :

# O R D E R

In accordance with the attached memorandum of law, **IT IS HEREBY**

**ORDERED THAT**:

    1) The motion for summary judgment (Doc. 62) is **GRANTED**.

    2) The Clerk of Court is directed to **ENTER** judgment in favor of Defendants

and against Plaintiff.

    3) The Clerk of Court is directed to **CLOSE** this case.


                           __s/Sylvia H. Rambo_____
                           United States District Judge

Dated:  April 7, 2010.